HYDE (TYLER v.). See Cases Nos. 14,309 and 14,310.

## Case No. 6,975.

### HYDE v. WOODS et al.

[2 Sawy. 655;[1] 10 N. B. R. 54; 1 Am. Law T. Rep. (N. S.) 354.]

Circuit Court, D. California. June 8, 1874.[2]

STOCK BROKERS—PROPERTY IN MEMBERSHIP.

1. Where under the articles of association of a board of stock brokers, a member cannot transfer his seat to a party not elected, and approved by the board; and where upon the insolvency of a member, his rights as such are forfeited, and the board is authorized to dispose of his seat, and apply the proceeds to the payment of his indebtedness to other members of the board, to the exclusion of all others, only the residue of the proceeds of the sale after paying all the liabilities provided for in said articles of association, is assets of such insolvent member.

[Cited in Bear v. Heasley (Mich.) 57 N. W. 280.]

2. Under such articles, F., a member, failed to meet his engagements in the board August 24, 1872, and being indebted in a large amount to sundry members. on that day assigned his seat in the board to W., with authority to sell and pay the proceeds to his various creditors in the board. With the assent of the board, W. sold the seat to T., who was elected by the board, for ten thousand dollars, and, with the approval of the board, paid the entire proceeds pro ratably to F.'s creditors. who were co-members. October 1st. 1872. F. was adjudged a bankrupt on petition of a general creditor, filed September 18, 1872. After said sale and payment, an assignee having been appointed, he brought suit against W. to recover said sum of ten thousand dollars: *Held*, that the assignee was only entitled to the residue after payment of F.'s liabilities to the co-members provided for in the articles of association, and there being no surplus, he was not entitled to recover.

Statement of facts as disclosed by the findings filed by the court. The action is by [Henry C. Hyde] the assignee in bankruptcy of Thomas W. Fenn, to recover the proceeds of the sale of the seat of Fenn in

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] [Affirmed in 94 U. S. 523.]

the San Francisco Stock and Exchange Board, which were received by defendants [F. H. Woods and others] within four months before the filing of the petition in bankruptcy. The petition in bankruptcy against Fenn was filed by a creditor September 20, 1872, and he was adjudged a bankrupt thereon October 1, 1872. In 1862 the San Francisco Stock and Exchange Board was organized, and a constitution and by-laws adopted for the government of all who should become members. Under said constitution and by-laws, the number of members was limited, and no person could be admitted except upon an election by ballot upon a proposal, made at least five days preceding the election; and five negative votes excluded the applicant. Every party so elected subscribed to the constitution and by-laws, and agreed to be bound by their provisions. There was at no time any ownership or property in the privilege of membership in said board, or right to do business therein as a member, except as provided in and limited by said articles, constitution and by-laws; and the privileges granted to any one becoming a member were not assignable, descendible or transferable, except as provided in said constitution and by-laws.

Article 9 of said constitution provided as follows: "Any member who fails or has failed to comply with his contracts, or becomes insolvent, shall be suspended until he has settled with his creditors. That on his application for re-admission, a committee of three members shall be appointed by the president to investigate his conduct and the cause of his failure. The applicant shall then be admitted to his seat in the board, upon the assent of two thirds of the members there present." Article 14 provided as follows, to-wit: "In case of a retirement of any member in good standing from this board, he shall have the right to sell his seat to the best advantage, and to nominate his assignee to fill the vacancy; provided, that said nominee shall thereby acquire no right or privilege, until proposed and elected in the manner and form prescribed by the constitution of this board, it being distinctly understood that this board reserves to itself the right to reject any or all nominees at its pleasure. Any member assigning his seat, shall be entitled to the initiation fee at the time, in case his nominee shall be elected by the board. In case of the death of a member, this board pledges itself to dispose of the vacant seat to the best advantage, for the benefit of the widow and children of the deceased; and in case there be neither widow nor children, then for the benefit of such parties as the deceased may indicate in his last will and testament. In case of the suspension of any member by failure to fulfil his contracts, or by insolvency, the board will exercise a generous discretion, guided by the circumstances of each case in disposing of the seat for the benefit of the party suspended. Provided, that a party who accepts the proceeds of the sale of his seat under this restriction, shall not be re-admitted, except in the manner and form prescribed by the constitution and by-laws, for the admission of new members. All members of this board who may have been suspended for six months and upwards, and who have not made a satisfactory settlement of their contracts during that time, shall be deprived of all privileges of membership of this board; and their seats become the property of their creditors in the board." Article 15 provided as follows: "In sales of seats for account of delinquent members, the proceeds shall be applied to the benefit of the members of the board, exclusive of outside creditors, unless there shall be a balance after payment of the claims of members in full."

Thomas W. Fenn became a member of said board October 21, 1871, subject to said articles, and thereby his privilege of doing business therein, and his seat became security to said board and the members thereof, for his obligations and indebtedness incurred in said board to the members thereof. On the twenty-fourth of August, 1872, he became delinquent in said board by failure to fulfill his contracts therein made with divers members thereof. On the same day, and for the purpose of securing to his said creditors in said board all benefit and advantage, which the security of said seat afforded them under said constitution and by-laws, and his agreement theretofore made on October 21, 1871, he, on said day, executed and delivered to the defendants a certain instrument in writing, in the words and figures following: "San Francisco, August 24, 1872. I hereby assign my seat in the San Francisco Stock and Exchange Board to Messrs. Wood & Freeborn, and hereby authorize them to sell the same to the best advantage, and apply the proceeds of sale to the payment of all debts due from me to the members of said board. T. W. Fenn. Witness, J. W. Freeborn." Thereafter, one W. B. Thornburgh applied for admission to said San Francisco Stock and Exchange Board, and was duly elected thereto as a member, and the defendants then and there, to-wit, on the sixteenth of September, 1873, by permission of said San Francisco Stock and Exchange Board, transferred the said membership or seat to said Thornburgh, and received from him therefor, the sum of ten thousand dollars, gold coin of the United States. At the time of the execution of said instrument, the admission of said Thornburgh and receipt of said money, said Fenn was insolvent, and said defendants then had reasonable cause to believe him to be insolvent, and at said times the said defendants were members of said stock board, and said Fenn as a member of said board, was indebted to said defendants as such members upon transactions had in said board, within the intent and meaning of said provisions of the constitution and by-laws hereinbefore set

out, for which the seat and privileges of said Fenn as such member were security, in the sum of more than $2973 30, and said Fenn was at said time in like manner, indebted to divers other members of said board, arising upon like transactions, and for which his said seat and privileges were in like manner security, in amounts exceeding the sum of ten thousand dollars in gold coin. Upon the receipt of said sum of ten thousand dollars, as aforesaid, and prior to the commencement of the proceedings in bankruptcy, set forth in the complaint herein, the defendants applied to the payment, and paid over to the several creditors of said Fenn in, and as members of said stock board, upon the said several amounts of indebtedness, the whole of said sum of ten thousand dollars so received, dividing the same pro ratably between said several creditors, the sum received and retained by said defendants, and applied to the satisfaction of a portion of the said indebtedness to themselves, being upon said pro rata division the sum of $2973 30, and no more, the remainder of said sum of $10,000 having been paid on the said claims of said other creditors in said stock and exchange board. At the time of the commencement of said proceedings in bankruptcy, the said funds had all been paid over and applied as aforesaid. There were not at that time any funds of said Fenn in the hands of said defendants, nor had there been any funds of his in their hands at any time other than as aforesaid.

Geo. B. Merrill, for plaintiff.
W. H. L. Barnes, for defendants.

SAWYER, Circuit Judge (after stating the facts). The San Francisco Stock and Exchange Board is a voluntary association. The members had a right to associate themselves upon such terms as they saw fit to prescribe, so long as there was nothing immoral, or contrary to public policy, or in contravention of the law of the land, in the terms and conditions adopted. No man was under any obligation to become a member unless he saw fit to do so, and when he did, and subscribed to the constitution and by-laws, thereby accepting and assenting to the conditions prescribed, he acquired just such rights with such limitations, and no others, as the articles of the association provided for. I find nothing in the articles, constitution and by-laws of this association in contravention of the law of the land. The rights acquired by a party entering the association with the assent of the other members are clearly prescribed in these articles. Under their provisions there is in a member no absolute unlimited right of disposition of his seat or the privileges of membership. Each member holds his seat and exercises the privileges conferred subject to certain prescribed rights of the association, and of the other members in his seat, in case he fails to perform his duty towards the association,

or to his fellow-members. And the rights accorded to the association or his fellow-members, by the terms upon which a member is admitted, cannot be abrogated or limited by any subsequent act of his. A member cannot dispose of his right of membership to another, unless the association shall accept that other in his stead, in the mode and upon the terms prescribed. If he fails to meet his liabilities to his fellow-members, incurred in the course of the proper business transactions of the board, he is suspended, and if his obligations are not met, and he is not restored within the time prescribed, his rights and privileges as a member become the property of the association, and are disposed of for the benefit of his creditors in the board to the exclusion of all others. He cannot himself by any act of disposition of his own, prevent this result. His general creditors can obtain through him no greater rights of property than he himself possesses. His privileges as a member of the stock board could not be seized and sold on execution, and transferred to another in violation of the rights secured by the contract of association, nor could a court of bankruptcy override the rights of the association or its members, secured to them by the terms of the contract under which he acquires any rights at all as a member, by disposing of a greater interest than he himself possesses. The only property of a pecuniary nature in Fenn after his default in the board, would be the residue left after disposing of his seat by the board in accordance with its prescribed usages, or with the assent of the board, and payment of his indebtedness to the members of the board, incurred in the transaction of its business. This is all that, under any circumstances, would be available to the general creditor, or with which the court of bankruptcy has any concern. The rest is the property of the board and its members, not Fenn's. In this case there was a delinquency of Fenn in his transactions in the board. He was indebted in large sums to the members upon transactions occurring in the board, for which his seat and privileges, as a member, were first liable, under the rules of the association. It is true that he did not insist upon waiting six months under the rules, as he might have done, before his seat became absolutely forfeited. He merely waived this right, and allowed his seat to be disposed of at once, and applied to the purposes provided for in the articles of association. His assignment to defendants only enabled them to close up without delay his connection with the board, and distribute the avails to the proper parties, instead of waiting six months. There is no claim set up that the privileges of Fenn did not sell for all they were worth; and the money realized did not satisfy the just claims of the other members. Nor is there any claim that this proceeding was in fact more dis-

advantageous to creditors, than if the proceedings had taken a different course. There was nothing left which, under any circumstances, could be available to the general creditors. Fenn transferred nothing to defendants that a court of bankruptcy could take hold of.

There was no residuum. His estate being subordinate to the claims of his associates, under the articles of association, and consisting only of such residuum, there was nothing of it of value. Defendants only received and distributed to the proper parties that part of the proceeds of Fenn's seat, which belonged to the other members, as they had a right to do under the articles of association.

The error of the plaintiff consists in regarding the seat of Fenn and its proceeds as wholly his property, subject to his absolute disposition, whereas he only had a qualified and limited property in it—an interest subordinate to that of his associates. His estate is what is left after other paramount claims are satisfied out of it, and there appears to be nothing left. The prior rights of his co-members accrued by virtue of the very act by which Fenn acquired any rights at all, as a member of the board, and they cannot be divested. The articles of association do not authorize Fenn, or anybody else, to dispose of Fenn's property contrary to the provisions of the bankru..t act [of 1867 (14 Stat. 517)], as claimed by the plaintiff. They only determine what the extent of his rights of property under the articles of association are, and authorize the board to administer its own affairs, and protect the rights of its own members in matters pertaining to the transactions of the board, in its own way. There must be judgment for the defendants with costs.

[NOTE. The plaintiff took the case to the supreme court on writ of error, where, in an opinion by Mr. Justice Miller, the decision of the lower court was affirmed. 94 U. S. 523. It was held, following the principle laid down in Nichols v. Eaton, 91 U. S. 716, that membership in the board was not a matter of absolute sale. Although it is property, yet it is, when purchased, qualified and incumbered by the conditions of article 15 and others, which conditions the creators of it had a right to impose, and a compliance with which is necessary to obtain it.]