## BLINDELL et al. v. HAGAN et al.

(Circuit Court, E. D. Louisiana.    February 9, 1893.)

1. COMBINATIONS IN RESTRAINT OF TRADE—EQUITY JURISDICTION.
      The statute against unlawful restraints and monopolies (Act 1890, 26 St. p. 209) does not authorize the bringing of injunction suits or suits in equity by any parties except the government.

2. SAME.
      The jurisdiction of the circuit court to entertain a suit to enjoin a combination of persons from interfering with and preventing shipowners from shipping a crew may be maintained on the ground of preventing a multiplicity of suits at law, and for the reason that damages at law for interrupting the business and intercepting the profits of pending enterprises and voyages must, in their nature, be conjectural, and not susceptible of proof.

3. SAME—INJUNCTION PENDENTE LITE—EVIDENCE.
      Evidence that, by reason of the action of a combination of persons, the crew left complainants' ship as she was about to sail, and that another

crew could not be procured for nine days, and then only with the assistance of the police authorities and the protection of a restraining order, while other vessels in the vicinity had no difficulty in getting crews, is sufficient to authorize the court to enjoin interference with the business of the complainants by such combination, pendente lite.

In Equity. Bill by Blindell Bros. against C. Hagan and others to enjoin interference with their business as shipowners. On application for an injunction pendente lite. Granted.

Henry P. Dart and F. B. Earhart, for complainants.
J. Ward Gurley, Jr., and J. D. Grace, for respondents.

BILLINGS, District Judge. This application is made and submitted on the bill and amended bill of complaint and numerous affidavits and counter affidavits. The substance of the bill, as amended, is that the complainants are aliens, being subjects of the kingdom of Great Britain, and that the defendants are citizens of the state of Louisiana; that the complainants are owners of the steamship Violante, which they are using in the carrying trade between this port and Liverpool; that they are prevented from shipping a crew by the unlawful and well-nigh violent combination of the defendants; that this combination is so numerous as to make it impossible for the complainants to obtain a crew without the restraining order of this court; that this unlawful interference of the defendants is interrupting the business of the complainants, which is that of persons engaged in the carrying trade between New Orleans and Liverpool, and is doing them an irreparable injury. The injunction has been asked for, first, under the act of 1890, (26 St. p. 209,) known as "An act to protect trade and commerce against unlawful restraints and monopolies." This act makes all combinations in restraint of trade or commerce unlawful, and punishes them by fine or imprisonment, and authorizes suits at law for triple damages for its violation, but it gives no new right to bring a suit in equity, and a careful study of the act has brought me to the conclusion that suits in equity or injunction suits by any other than the government of the United States are not authorized by it.

This brings me to the second ground upon which the injunction is asked. The citizenship of the parties is such that the United States circuit court has jurisdiction, and the complainants may urge before this court any grievance which they may have in law or equity as fully as they could do in the courts of a state. That the complainants may maintain a suit at law is conceded by the solicitors for the defendants. The prohibition in the statute of 1789 against suits in equity in the courts of the United States, where the plaintiff has a plain and adequate remedy at law, has been repeatedly held to enunciate or introduce no new doctrine, but it is enforced rigidly by the courts of the United States, because, if a suit in equity is allowed, the defendant is cut off from the right of trial by jury, which is by the constitution of the United States guarantied to him in all common-law cases involving upwards of $20. There can be equity jurisdiction only when the case in question belongs to one of the recognized classes of cases over which equity has jurisdiction. The

question, therefore, is, does this case belong to one of those recognized classes? If it does, it is because the nature of the alleged injury is such that it would be difficult to establish in a suit at law the damage of the complainant, and because to entertain it would prevent a multiplicity of suits. Undoubtedly, Chancellor Kent lays down the correct rule in Jerome v. Ross, 7 Johns. Ch. 333, that cases of ordinary trespass are not within the cognizance of equity; but in Livingston v. Livingston, 6 Johns. Ch. 500, 501, he adds a qualification which shows the ground of discrimination between such trespasses as equity will enjoin and those which will not: "There must be something particular in the case of a trespass, * * * or to make out a case of irreparable mischief," in order to authorize equity to interfere, and an injunction to issue.

In Laussats' notes to Fonblanque's Equity, at page 3, he lays down the principle which is the fundamental one, concurred in by all the writers upon equity as the basis of equity jurisdiction in cases of trespass, as follows: "The foundation of this jurisdiction of equity is the probability of irreparable mischief, the inadequacy of a pecuniary compensation, and the prevention of a multiplicity of suits." The difficulty has been in applying this principle. Where there is a large combination of persons to interfere with a party's business by violence, the equity jurisdiction, if maintainable at all, is maintainable on either of two grounds,—the nature of the injury, including the difficulty of establishing in a suit at law the amount of actual damages suffered, or the prevention of a multiplicity of suits. The jurisdiction, for these reasons, was maintained in the following cases: Emack v. Kane, 34 Fed. Rep. 47; Casey v. Typographical Union, 45 Fed. Rep. 135, 144; Gilbert v. Mickle, 4 Sandf. Ch. 381, (marg. p. 357;) Sherry v. Perkins, 147 Mass. 212, 17 N. E. Rep. 307. In Osborn v. Bank, 6 Wheat. 845, the court says:

"In those cases [wrongful transfers of stocks and other securities] the injured party would have his remedy at law; * * * but it is the province of a court of equity in such cases to arrest the injury, and prevent the wrong. The remedy is more beneficial and complete than the law can give."

With reference to another class of cases, courts of equity have sometimes taken jurisdiction for the reason which requires that they should take jurisdiction here, viz. those cases for specific performance when there could be no adequate compensation in damages. In Taylor v. Neville, cited by Lord Hardwicke in Buxton v. Lister, 3 Atk. 383, a specific performance was decreed of a contract of a sale of 800 tons of iron to be delivered and paid for in a certain number of years, and by installments. Equity enjoins in such cases, because, though the injured party may have his suit at law, his damages must be conjectural. See Adderley v. Dixon, 1 Sim. & S. 607, 611. So in cases of trespass, where a business is interrupted, and the profits of pending enterprises and voyages are intercepted, the party injured must fail of recovering full compensation, for his damages must at law be largely conjectural; and for this reason, as well as to prevent a multiplicity of suits, he may, by an injunction in equity, arrest the threatened wrongdoing, and prevent the

consequent injury, which is irremediable, because it consists in the loss of profits which are not susceptible of proof.

My conclusion, therefore, is that the bill of complaint in this cause states a case over which a court of equity must take jurisdiction, in that it is a case where the threatened damages are irremediable at law, as well as one where the equity suit will prevent a multiplicity of suits.

As to proof upon the question of fact. There have been filed in this case in all 49 affidavits. I subjoin to this opinion a summary of each of these depositions. The preponderance of proof establishes that the British steamship Violante arrived at this port from Vera Cruz November 29, 1892, and on the 30th the crew was paid off. At that time the crew made no complaint regarding the food they received, or their treatment, or the safety of the ship, and continued at their duties until about noon of December 15, 1892, without complaint, except that some of the crew had asked the captain whether they would be paid before leaving port for the days in which the ship had been lying at the wharf, to which he answered he could not do so, as it would be a violation of all agreements between the crew and the ship. On December 15, 1892, after the ship had been cleared from the customhouse, and the pilot had come aboard, the crew, with the exception of the steward and the cook, retired from the ship. Being thus deprived of its crew, the ship could not leave on December 15th, as contemplated. It is also established that the steamer Violante, after her crew left, on the 15th of December, did not succeed in getting a crew until December 24, 1892, after the restraining orders had been issued against the defendants in this cause, and that, during the whole period of nine days, the police authorities were called upon, and went to the assistance of the master and agents of the vessel in getting a crew; that, while other steamers in the vicinity had no difficulty in getting crews, the steamer Violante was unable to get a crew to stay on the vessel until they got the protection of the restraining orders from this court. I think the evidence establishes that the inability of the ship to retain the crew already shipped, and her inability to obtain another crew, except after the interference of this court by its restraining orders, were due to the acts of the defendants. The evidence fails to connect the defendant Dunn with the unfriendly acts of the other defendants. I think the case, upon the question of facts, as well as law, is with the complainants, and that the injunction pendente lite should issue against the defendants, except the defendant Dunn. As to him it is refused.