[No. 14981. Department Two. — August 10, 1893.]

BENJAMIN B. RORKE, APPELLANT, *v.* SAN FRANCISCO STOCK AND EXCHANGE BOARD, RESPONDENT.

SAN FRANCISCO STOCK AND EXCHANGE BOARD — SUSPENSION OF MEMBER — SALE OF SEAT — LOSS OF RIGHTS — MANDAMUS. — Where a member of the San Francisco Stock and Exchange Board has been suspended from his seat or membership in the board, and his right thereto sold to satisfy a lien thereon for debts contracted by him as a member, in accordance with the constitution and by-laws of the board, and having failed for six months to settle up the claims against him and seek restitution to membership, as provided by the by-laws, his membership therein ceased and all his rights appertaining thereto were extinguished, and mandamus will not lie to compel his restoration to membership.

ID. — FAILURE TO MEET ACCOUNTS WITH FELLOW-BROKER — REPORT OF 'DEFAULT — ARBITRATION — CONSTRUCTION OF RULES. — A rule of the board requiring the creditors of a member who fails to comply with his stock contracts to report his default within forty-eight hours refers to contracts for the purchase or sale of stocks in the board, and has no application to a case where stocks are carried for a broker by a fellow-broker for months in an open and running account, and a final settlement of the account is referred to a committee of arbitration under another rule of the board, and where there is no default until a failure to meet the balance ascertained to be due by the committee of arbitration, and it is sufficient report of default in such case where such committee reports the delinquency of the member within two days after their report of the amount of the indebtedness.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.

The facts are stated in the opinion.

*Sullivan & Sullivan,* for Appellant.

The plaintiff was entitled to judgment as he was expelled without formal act of the defendant.   Where a rule or method of expulsion is provided, it must be strictly followed.   (Bacon's Benefit Societies, sec. 101; *Otto* v. *Journeyman's Tailor's P. & B. Union,* 75 Cal. 309; 7 Am. St. Rep. 156; *Fisher* v. *Keane,* 11 Ch. Div. 353; *Labouchere* v. *Earle of Wharncliffe,* 13 Ch. Div. 346; *Commonw.* v. *Pike Beneficial Soc.,* 8 Watts & S. 247; *Washington Beneficial Soc.* v. *Bacher,* 20 Pa. St. 425; *Society for Visitation of Sick* v. *Commonw.,* 52 Pa. St. 125; 91 Am. Dec. 139; Bacon's Benefit Societies, sec. 100; *Scheu* v. *Grand Lodge etc.,* 17 Fed. Rep. 214.)   The court will not presume that the proceedings for the suspension were regular. (*Fisher* v. *German Soc.,* 15 Pa. St. 251; Bacon's Benefit Societies, sec. 110.)

*Jarboe & Jarboe, Robert H. Countryman, Jarboe, Harrison & Goodfellow,* for Respondent.

Plaintiff was tried by a tribunal of his own selection and found to be indebted to his fellow-members, and the judgment of the court was proper.   (*Robinson* v. *Irish American B. Soc.,* 67 Cal. 135; *Peyre Mutual Relief Soc.,* 90 Cal. 240.)

SEARLS, C.—The proceeding in the court below was had under an alternative writ of mandate, issued on the application of appellant, to the San Francisco Stock and Exchange Board (an unincorporated association), commanding it to restore the applicant, Benjamin B. Rorke, to membership in said association, and to all the rights, privileges, and immunities pertaining thereto, or that it show cause, etc., why it had not done so.   Respondent appeared and showed cause, whereupon a trial was had and judgment rendered in favor of the association.   Rorke moved for a new trial; his motion therefor was denied, and he prosecutes this appeal from the order.

The San Francisco Stock and Exchange Board is a voluntary association of individuals, and as such is, and for over twenty years has been, engaged in the business of buying and selling stocks in the city and county of San Francisco, and has adopted and is governed by certain articles of agreement known as its constitution and by-laws, which have been agreed to and subscribed by each and all of its members, the appellant herein included. Plaintiff was a member of the board, as were S. B. Wakefield and A. W. Foster, doing business under the firm name of S. B. Wakefield and Company.

On the twenty-ninth day of July, 1885, plaintiff was suspended from membership of respondent, and on the thirty-first day of January, 1886, more than six months having elapsed and he not having been restored, his membership or right to a seat in the board as it is termed is claimed to have reverted to the board, and was by it sold to meet his liabilities to Wakefield and Company and other members of the board to whom he was indebted.

Plaintiff claims that the act of defendant in depriving him of membership was illegal and in contravention of its constitution and by-laws.

Prior to July, 1883, plaintiff herein had various transactions with Wakefield and Company in buying and selling stocks, and Wakefield and Company had paid out for plaintiff various sums of money in purchasing and carrying for him stocks, so that on said last-mentioned day plaintiff was indebted to the firm in the sum of $5,137.42, which he promised but failed to pay.

On the twenty-fifth day of July, 1885, there was due and owing to Wakefield and Company from the plaintiff $4,994.92, which, as the court found had been by mutual consent of the parties, continued from the time the same accrued up to the last-mentioned date.

On said twenty-fifth day of July, 1885, the said firm of S. B. Wakefield and Company presented to the president of defendant a written request for a committee to investigate the matter in dispute between them and the plaintiff herein, and on said day the vice-president of defendant (said Wakefield being president) appointed a committee of three to investigate and report. Such action was had that the committee reported to defend-

ant on the twenty-seventh day of July, 1885, that plaintiff was indebted to Wakefield and Company in the sum of $4,994.92. This report was unanimously adopted by defendant.

On the twenty-ninth day of July Wakefield and Company reported the delinquency of plaintiff to the board, and thereupon plaintiff was suspended from his seat or membership in the said board.

The constitution and by-laws of defendant are in evidence in the case. They are too voluminous to be copied at length, and except those under which the contention here arises, may be referred to as follows: Any member failing to meet his engagements in the board shall be suspended until he has settled with his creditors. If he settles within six months he may be restored by a two-thirds vote. If he does not settle in six months his seat is to be sold and proceeds applied to payment of his creditors, as therein provided. The seat and privileges of every member is a continuing security to all members with whom he may deal for the performance of his contracts and the fulfilment of his engagements.

The following articles of the by-laws are given at length:—

Art. XVII. "Limitation of contracts. This board will take no cognizance of contracts that remain unsettled five days after they become due, unless continued by mutual consent."

Art. XXV. "Default must be reported within forty-eight hours and claim filed within thirty days thereafter.

"In cases where a member of the board shall fail to comply with his stock contracts, it shall be the duty of his creditors to report said default to the president of the board within forty-eight hours after said defalcation becomes known to them. No claim or contract unless so reported shall ever after be recognized or enforced by this board. During the suspension of a member no such report shall be required.

"All claims of members and non-members against said delinquent member must be filed with the secretary of the board within thirty days after he has been reported, and must be accompanied by a detailed statement of the account.

"No claims unless so filed shall ever after be recognized or enforced by this board."

Art. XLIX. "Investigation of claim by arbitrating committees.

"All differences, investigations of claims, or settlement of accounts between members, or between members and non-members, shall be referred by the president, unless otherwise ordered, to committees of arbitration, consisting of at least three members. Said committees shall report in writing within fifteen days from date of appointment, unless further time be granted; and their report if adopted shall stand as the award of the board."

The contention of appellant is, that by failing to report the default of Rorke to the board within forty-eight hours after it became known to them, as provided by section 25 of the by-laws, Wakefield and Company lost all right to recognition, and the board had no authority to suspend appellant.

Counsel for respondent, on the other hand, claim that section 25 relates to contracts entered into for the purchase or sale of stocks in the board, the price agreed to be paid therefor, the delivery and payment for stocks so purchased — questions, most of which are to be solved by reference to the records of the board — questions which can be more readily solved while transactions are fresh in the memory of the parties in interest and members, and when mistakes, if any, can be more certainly corrected, and that it has no application and was not intended to apply to cases like the present, where stocks were carried for appellant for months, assessments paid thereon, interest charged up, and dividends, if any, credited to the account, etc., to what in fact was an open and running account between Wakefield and Company, as brokers, and appellant, who while himself a broker, and liable as such, was a customer of Wakefield and Company, at least to this extent; so long as Wakefield and Company and appellant by mutual consent permitted the open account to run, there was no default on the part of appellant to be reported within the meaning of article XXV. of the by-laws. It was only upon the ascertainment of the balance due by the committee of arbitration, and a failure to meet it that the default occurred.

The court below evidently did not regard section 25 as having any application to transactions of the character involved here. In this I am of opinion it was correct.

" In cases where a member of the board shall fail to comply

with his stock contracts, it shall be the duty," etc. The section was evidently intended to meet cases in which the member has contracted as a broker in the board to purchase, or sell, and deliver stocks—contracts which are within the knowledge and jurisdiction of the board and its members.

The transaction between appellant and Wakefield and Company commenced by the employment of appellant by Wakefield and Company to purchase and sell stocks for them in the board on a commission, during which employment he purchased on his own account certain stocks for which the firm paid, and which in the language of the guild they carried for him, and which in July, 1885, culminated in an indebtedness on his part in the sum of $4,994.92. Thereupon Wakefield and Company called for arbitrators under article XLIX. of the by-laws, who reported the indebtedness as above stated; and within two days thereafter they reported his delinquency.

The contention of appellant is that there was no *dispute* between the parties to settle, and hence no occasion for a committee of arbitration. The answer is that section 49 provided not only for "differences" between parties, but for an "investigation of claims or settlement of accounts," and is the mode by which the board becomes informed of the amount due and owing by its members, and is the method adopted by which the debtor may have a hearing, and the board obtain authentic knowledge upon which to base its subsequent action. It is not clear, however, that there was no *dispute*. Foster, the surviving partner of Wakefield and Company, who was a witness, says: "I presented our claim against Rorke to the committee for consideration. Rorke was present, and his protest was that the account was wrong; that the figures were not correct; that something was the matter with the account. The committee then adjourned for two days. At the second session he did not have any evidence that the account was wrong." This looks very much like a *dispute* between the parties as to the balance due on the account.

The court found that the indebtedness of appellant to Wakefield and Company was by their mutual consent continued from the time the same accrued until reported, etc. The whole course of dealing between the parties indicates this. Appellant testi-

fied that he expected to pay it off by securing commissions from the firm as he had theretofore done.

The whole proceeding whereby appellant was suspended from his seat, or membership in the board, and his right thereto sold to satisfy the lien thereon for debts contracted by him as a member, seems to have been in obedience to the constitution and by-laws of the association, and having failed for six months to settle up the claims against him and seek restitution, his membership in defendant ceased, and all his rights appertaining thereto were extinguished.

The order appealed from should be affirmed.

Belcher, C., and Temple, C., concurred.

For the reasons giving in the foregoing opinion, the order appealed from is affirmed.

McFarland, J., De Haven, J., Fitzgerald, J.

Hearing in Bank denied.