# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## GREER, MILLS & CO. v. STOLLER et al.

### (Circuit Court, W. D. Missouri, W. D. November 6, 1896.)

**1. FEDERAL COURTS—JURISDICTION—NONRESIDENTS OF DISTRICT—MONOPOLIES.**

A bill by members of a business exchange to enjoin the board of directors from enforcing against them certain by-laws of the association on the ground that the same are illegal, as being in restraint of trade and commerce, cannot be based upon the "Anti-Trust Law" of July 2, 1890 (26 Stat. 209); for the right given by section 4 thereof to bring suits for injunction is limited to suits instituted on behalf of the government. Therefore the authority given by section 5, to bring in nonresidents of the district, cannot be availed of in private suits, and the court can acquire no jurisdiction over them.

**2. PARTIES TO ACTIONS—DIRECTORS OF UNINCORPORATED ASSOCIATIONS.**

All the directors of an unincorporated association are necessary parties to a suit against it arising out of contractual relations, even though a less number are authorized by the association to transact business.

**3. VOLUNTARY ASSOCIATIONS—SUSPENSION OF MEMBERS.**

Where a member of a voluntary association has been suspended by the directors for nonpayment of a fine for violation of the by-laws, his action to be restored to the privileges of membership is founded upon the contract between himself and the association, which he must either accept in its entirety or repudiate. He does not occupy the position of a stranger injured by the acts of co-trespassers.

This is a bill in equity seeking to enjoin the defendants from doing certain specified acts. The complainant is a nonresident of the state. The respondents constitute the board of directors of the Kansas City Live-Stock Exchange, a voluntary business association of this district.

The general objects of this association, as declared in its articles of association, are "for the purpose of organizing and maintaining a business exchange, not for pecuniary profit or gain, nor for the transaction of business, but to promote and protect all interests connected with the buying and selling of live stock at the Kansas City Stock Yards, and to promulgate and enforce amongst the members correct and high moral principles in the transaction of business." By subscribing thereto, the members agreed with each other to faithfully observe and be bound by the rules and by-laws of the association. The complainant became a member thereof, and participated in the proceedings and business of the association for a

long time prior to the institution of this suit. For an alleged violation of the by-laws of the association it was, in accordance with the provisions of such by-laws, tried by the governing board of the association, and, being by them found guilty, was sentenced to pay a fine of $1,000, and suspended until the said fine should be paid. Refusing to comply therewith, the board of directors, as authorized by the by-laws of the association, sought, by giving public notice thereof on the bill-boards of the association and otherwise, to induce the members of the association to cease to do business with the complainant as a member of the association, and to obstruct its business operation as a member of the association, by denying it the privilege of members in selling stock on commission through the exchange. Thereupon it brought this bill in equity, setting out in detail its grievances, alleging that the by-laws thus sought to be enforced against it are illegal, being in restraint of trade and commerce, and tending to create a monopoly by the said board in the live-stock business at said stock yards, and charging the defendants with attempting to enforce against it what is termed a "boycott." The bill alleges that the complainant gave notice to the board of the withdrawal of its assent hitherto given to the by-laws complained of; and it asks to have the respondents enjoined from further attempting to enforce said by-laws and said penalty and order of suspension against it, and from further interfering with its business as a member of the said association or otherwise, and from publishing such notices or otherwise of the fact of said suspension, and from requiring other members of the association to cease to do business as such with the complainant, and for general relief. The bill discloses that the association is composed of about 300 members, the price of membership at this time being $1,000; and that the defendants constitute the board of directors of the association; all of which board are resident citizens of this district, except the respondent Hanna, who is a citizen of the state of Kansas. Hanna has filed a motion to be discharged herefrom for want of jurisdiction over him, while the other defendants move to dissolve the temporary injunction granted heretofore herein, for the reason, inter alia, that because of the want of jurisdiction over said Hanna all the necessary parties are not before the court to authorize it to proceed to final decree. Other essential facts appear in the following opinion.

Mills, Smith & Hobbs, Lathrop, Morrow, Fox & Moore, and Albert H. Horton, for complainant.

Hutchings & Keplinger, McGrew, Watson & Watson, and Karnes, Holmes & Krauthoff, for defendants.

PHILIPS, District Judge (after stating the facts). The defendant Hanna being a nonresident of the state, this court can acquire no jurisdiction over him against his consent, unless it can be maintained that this action is predicable of the act of congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies." 26 Stat. 209. By the fifth section of this act, the court, whenever the ends of justice require it, may bring before it other parties by summons, "whether they reside in the district in which the court is held or not." Can a private citizen, for a redress of a private grievance, maintain a bill in equity for an injunction under this act? The things forbidden by the act are declared to be criminal offenses against the government of the United States. By the fourth section, the jurisdiction is conferred upon the circuit courts of the United States to prevent and restrain the violations of this act, "and it shall be the duty of the several district attorneys of the United States in their respective districts, under the direction of the attorney general, to institute proceedings in equity to prevent and restrain such violations; such proceedings may be by way of petition setting forth the case and praying that such violations shall be enjoined

or otherwise prohibited." Section 7 gives to the private person "injured in his business or property by any other person or corporation by reason of anything forbidden, or declared to be unlawful by this act," a right to sue in a circuit court of the United States in the district in which the defendant resides or is found for threefold damages by him sustained. The statute, being highly penal in its character, must be strictly construed; and, having created a new offense, and imposed new liabilities, and having provided the modes of redress to the public and the private citizen, by established rules of construction, these remedies are exclusive of all others. Suth. St. Const. §§ 392–394, 399; Riddick v. Governor, 1 Mo. 147; Stafford v. Ingersol, 3 Hill, 38; Chandler v. Hanna, 73 Ala. 390. While there has been some contrariety of opinion among judges as to whether or not the right of injunction to a private citizen is accorded by this statute, my conclusion is that the right is limited by the fourth section to injunction at the relation of the district attorney, and that the seventh section gives to the private citizen his only remedy. Blindell v. Hagan, 54 Fed. 40, 41; Id., 6 C. C. A. 86, 56 Fed. 696; Pidcock v. Harrington, 64 Fed. 821. Therefore Hanna has a right to insist that he cannot be sued in this jurisdiction. In re Keasbey & Mattison Co., 16 Sup. Ct. 273–275. The motion to dismiss on behalf of the defendant Hanna is therefore sustained on the ground of his nonresidence.

The question, then, occurs, can this suit proceed without his presence as a party? In other words, is he a necessary party? The Kansas City Live-Stock Exchange is an unincorporated voluntary association composed of about 300 members. Such associations of individuals, in respect of their rights and liabilities, are generally regarded as mere partnerships. Dicey, in his work on Parties, says:

"An unincorporated company is fundamentally a large partnership, from which it differs mainly in the following particulars, viz.: that it is not bound by the acts of the individual partners, but only by those of its directors or managers; that shares in it are transferable; and that it is not dissolved by the retirement, death, bankruptcy, etc., of its individual members." Page 149.

As said in Phipps v. Jones, 59 Am. Dec. 711:

"Suits by and against such associations cannot at common law be brought and maintained in the name of the association, or in the name of its agents or trustees. Curd v. Wallace, 32 Am. Dec. 85; Schuetzen Bund v. Agitations Verein, 44 Mich. 313, 6 N. W. 675. But actions must be brought and maintained in the names of all the members. * * * On the ground that they have a common interest, members of a voluntary unincorporated association are entitled to join in a suit in regard to matters pertaining to or affecting such interest. Mears v. Moulton, 30 Md. 142."

The individual members of such associations retain all their original autonomy, except in so far as they may, by consent to the articles of association, have surrendered such right. In the absence of such assent, not even a majority of the associates could bind the individual member. His judgment would remain independent. A proceeding, therefore, to control the action of and bind the associates, must be directed against the whole membership. But where, as in this instance, the executive administra-

tion of the business affairs of the association is by articles of agreement committed to a designated board of less number than the whole, it may be conceded that a judicial proceeding against the association may be maintained by summons against such board.

Rule 1 of the association, referred to in the bill of complaint, vests the government of the exchange in a board of 11 directors, composed of the president and vice president of the association, 7 members of which shall constitute a quorum for the transaction of business. Unquestionably, but for the provision clothing the number 7 with the functions of government, it would require the presence and co-operation of the whole 11 to transact any business. But this 7 must not only be present, assembled as a board, to perform any official act (Hay-Press Co. v. Devol, 72 Fed. loc. cit. 721, 722), but they are clothed with the functions of acting for and representing the board only for the transaction of business of the association, and not for any other purpose. It does not authorize affirmative action against the association by notice to seven of the directors. As to third persons moving against the association to bind the constituent members, notice must be given to all. As said in People v. Batchelor, 22 N. Y. 134:

"It is not only a plain dictate of reason, but a general rule of law, that no power or function intrusted. to a body consisting of a number of persons can be legal without notice to all the members composing such body."

See, also, 1 Mor. Priv. Corp. (2d Ed.) §§ 479–532.

In McGreary v. Chandler, 58 Me. 538, which was an action served on a portion of the directors of a voluntary association, the court said:

"The Machias Mining Company is a voluntary association of individuals, and not a corporation under the laws of the state. The defendants are members, and assume to act as its directors, and as such to bind the association. If they have bound the association, as they purport to have done, all its members are bound by and liable upon their contracts. A suit in such case would be against all the members. In the present case it is against three of the associates only."

The question under consideration was passed upon in Wall v. Thomas, 41 Fed. 620. The suit was by a member of an unincorporated association, whose management was intrusted to nine trustees. The bill charged the trustees with mismanagement of the affairs of the association, and asked for an injunction. Only four of the trustees were summoned, presumably because the others were nonresidents of the district. It is true, the defendants summoned were less than a majority of the trustees, but the logic of the ruling was that all of the trustees were necessary parties, and therefore the bill could not be entertained. The court said:

"If the defendants are enjoined, their co-trustees will to that extent be crippled, and may be wholly prevented from doing what they propose. What is proposed to be done may be lawful and authorized, and, indeed, essential to the protection of the great interests with the management of which the trustees are charged. It is not enough that, according to the averments of the bill, these things are unauthorized, and a breach of trust, because the absent trustees have the right to be heard before these averments are taken as true against them. And they cannot be assumed to be true as the basis for a decree until all those who have a right to challenge them have been given an opportunity to do so. A contrary rule would put it in the power of a minority of unfaithful trustees, by collusion

with a beneficiary whose interests might not lie with those of other beneficiaries, to defeat the performance of legitimate and exigent official duties by faithful trustees."

The logic of the opinion clearly shows that it is just as incompetent to undertake to bind the body of trustees by a proceeding against six as it would be against three, for the learned judge says:

"Succinctly stated, the court is called upon to adjudge not only that the defendants have abused their trust, but also that the absent trustees have done so, and to decree that what the absent trustees propose to do is unauthorized and unlawful. While the absent trustees would not be bound by such a decree, it could not be made without embarrassing, and perhaps defeating, their contemplated action, because it would deprive them of the co-operation of their co-trustees."

The court then proceeds to argue that, if the injunction would prevent the absent trustees from taking any action, it should not be granted without giving such absent party an opportunity to be heard; and that such a suit would be an attempt by indirection "to control the management of a trust fund without giving some of those who are charged with the duty of managing it a right to be heard."

This is a wholesome rule. As applied to business corporations whose management by charter is committed to a board of directors, the courts, with unyielding decision, have required that all acts of such trustees affecting the property of the corporation, and all acts of an administrative character should be performed by them when assembled as a board, so that their action should be a unit, and the result of deliberation with that mutual interdependence of judgment which comes from consultation one with another. Cammeyer v. Lutheran Churches, 2 Sandf. Ch. 208–229; State v. Ancker, 2 Rich. Law, 245; Hay-Press Co. v. Devol, 72 Fed. 717; Hill v. Mining Co., 119 Mo. 9–24, 24 S. W. 223. If a suitor may proceed against less than the whole number of trustees to bind the association, against how many and which of the number? Shall he select them? He might omit those from the summons whose wise counsel and staid judgment would be most valuable and reliant to the body in defending in court. While section 739, Rev. St. U. S., declares that, where there are several defendants in any suit at law or in equity, and any number of them are not inhabitants of nor found in the district where suit is brought, and do not voluntarily appear, the court may proceed to adjudication, yet it is the recognized construction of this statute that it has reference only to instances of mere formal parties, or where the cause may be determined, and justice satisfied, "without essentially affecting the interests of absent parties"; as where the interests of the parties absent are separable from those before the court. But where persons have not only an interest in the controversy, but such an interest that a final decree would affect it, or leave the controversy to be fought over in subdivisions, in order to conclude the rights and measure out the equities of all, they are indispensable parties to the exercise of jurisdiction. Shields v. Barrow, 17 How. 130; Wall v. Thomas, supra. The defendant Hanna, both as trustee and member of the association, has a direct personal interest in and important official relation to the management and

property of this association. There is not only committed to his keeping, by the rules of the association, the responsible duty of assisting and managing its affairs, but in the custody and management of the $12,000 of assets which the bill alleges to be now in the treasury of the association, as also in the management and disposition of the $1,000 fine assessed against the complainant, the collection or enforcement of which the bill seeks to enjoin. And as a member of the board of business managers he is entitled to a voice in deciding whether or not the board shall resist or accede to complainant's demand. To enable the complainant, therefore, to proceed to judgment against the segment of the managing board of trustees before the court, it must be held that the suit, in its legal effect, presents the instance of an action ex delicto by a party wrongfully injured in his property rights by the tortious acts of several persons, in which case the injured party may proceed jointly or severally against the tort feasors for satisfaction. Boyd v. Gill, 19 Fed. loc. cit. 145.

This brings us to a consideration of the character of the case presented on the face of the bill, around which is centered the real battle between the contending parties. What is the real gravamen of the bill? Do the facts alleged constitutive of the cause of action depend upon a contractual relation between the complainant and the association, or does it occupy the attitude of a stranger injured by the act of co-trespassers? If the cause of action is dependent upon a contract between the parties sustaining inter sese the relation of co-partners, the rule of equitable procedure seems to be well established that all the partners, or at least all the board of trustees, representing the association, must be made parties. The bill alleges the existence of a voluntary business association, and sets out or refers to in appropriate form the articles of association and its by-laws. It appears that the complainant became voluntarily a member thereof, and subscribed to the articles of agreement, and thereby became entitled to share in and enjoy the privileges, rights, and benefits of the business organization. Reduced to its actual essence, the complaint is that, although the complainant, in becoming a member of the association, agreed that its board of managers, for any infraction of the established rules of business ethics, might, in its discretion, visit upon the offending member a fine, to be enforced, if not paid, by suspension and expulsion, with a further disability of being refused by other members of the association recognition in their dealings as live-stock commission men, so that, so far as they are concerned, he would be proscribed in the dealings of the association,—it then complains that, by reason of the visitation upon it of the penalty of these regulations, it is barred the privileges and benefits accruing to a member of the association. It complains that it is practically prevented from collecting its commissions on live stock sold at the stock yards, which are secured to it by the articles of association. And among the grievances complained of it is alleged that a fine was imposed upon it by the board of directors for a violation of the rules and regulations of the association, and that an order of sus-

pension was made and published; and that among its regulations is one providing that no hogs can be sold on the exchange unless the same have been "docked,"—that is, an estimate made by the inspectors of the association designated therefor as to the average weight of the hogs,—and that by reason of the refusal of the managing board to have hogs consigned to it for sale "docked" it is unable to make sales thereof on the exchange; whereby, in connection with other efforts of the board to visit upon it the penalty of disbarment, a practical "boycott" is put in force against it. The bill then alleges that so much of the by-laws as authorizes the board to impose such fine, to suspend and expel the complainant, is contrary to sound public policy, and is in restraint of trade, and tends to give the other members of the association a monopoly of such business at the stock yards in question, and that this complainant, having notified the board of its withdrawal and its assent to such rules and regulations when it became a member, it is now entitled to have the same nullified, and its rights as a member recognized by the board. It thus is quite apparent that the whole predicate of the action has its root in the contract by which complainant became, and yet claims to be, entitled to the rights of a member of this association. In substantive effect it seeks to be restored to all the rights, privileges, and benefits of a membership in the live-stock exchange, the deprivation of which is the sole gravamen of the complaint. The right, for instance, to have the hogs consigned to it for sale on commission "docked," whereby it may be able to sell them on the exchange, is wholly dependent upon its contractual relation to the association. There is no claim in the bill that the "docking" regulation is vicious, as conflicting with any public policy of this state or at common law. Neither does the complainant complain that the general articles of the joint association to which it subscribed are contrary to law, or that the limitations in the articles of agreement and by-laws fixing a minimum commission at which any member shall sell live stock shipped to this market, and prohibiting its members from conducting here such business "on the outside," are in restraint of trade, or tend to create a monopoly. So that the complainant occupies in this controversy the anomalous attitude of claiming the privileges and benefits attaching to and ensuing from the association, while denouncing as illegal and inoperative that portion of the articles designed to make the combination effective and obligatory on the associates. It may be conceded that in respect of a certain character of contracts they may be good in part and bad in part, so that the court may enforce that which is valid and reject that which is vicious; but that is not this case. The rights of the complainant being bottomed on its having become a member of the association by subscribing to its articles and its body of by-laws, can it, under such a compact, ask a court of equity to restore it to fellowship, while rejecting a part of the creed of the order? As said by Chief Justice Coleridge in Steamship Co. **v.** McGregor, 21 Q. B. Div. 544: "It is a bargain which persons in the position of the defendants here have a right to make, and those

who are parties to the bargain must take it or leave it as a whole."

So, waiving any question of whether or not certain provisions of the articles of agreement and by-laws are contrary to public policy, the fact remains that, had the complainant declined, when it applied for admission into the association, to subscribe to and accept the articles and by-laws as a whole, it would not have been admitted to membership. In such contingency, it would hardly need the citation of authorities to command the assent of the learned counsel representing this complainant to the proposition that no court would issue a mandatory injunction compelling the admission of such an applicant to membership, for the palpable reason that it is entirely a matter of contract, and it takes two parties to make a contract; and courts ought never to undertake to make a contract between two free, responsible persons. It does seem to me that this complainant must choose to be either in or out of this association. It cannot be half in and half out. If a member, and the contract of membership be what is sometimes inaptly termed "illegal," but is simply one in contravention of a sound public policy, as said by Lord Justice Bowen in Steamship Co. v. McGregor, 23 Q. B. Div. 598, 619, it is one which the courts do "not prohibit the making of," but which they will simply "not enforce." And the converse of the proposition must hold good,—that, if he be outside of such an association, he cannot appeal to a court of equity to reinstate him after expulsion; nor can he base any right of action on the alleged illegal character of part of the articles of association of the exchange or its by-laws (American Live-Stock Commission Co. v. Chicago Live-Stock Exchange, 143 Ill. 210, 32 N. E. 274), so long as he insists upon the rights of a member. A member is entitled to the privileges and rights inhering in a membership so long only as he keeps his part of the contract, expressed in his subscribing to the articles and by-laws of the association. 1 Beach, Priv. Corp. §§ 19, 83, 84, 309; Boone, Corp. § 333; Supreme Lodge v. Wilson, 14 C. C. A. 264, 66 Fed. 788; Hammerstein v. Parsons, 38 Mo. App. 336, 337; Warren v. Exchange, 52 Mo. App. 157–167.

It is a general rule of law, applicable to such voluntary associations, that a member must either submit to its rules or surrender his membership. White v. Brownell, 2 Daly, 329, 337, 342, 350; Id., 3 Abb. Prac. (N. S.) 318; Hyde v. Woods, 2 Sawy. 655–659, Fed. Cas. No. 6,975; Lafond v. Deems, 81 N. Y. 507–514; Weston v. Ives, 97 N. Y. 222–228; Lewis v. Wilson, 121 N. Y. 284–287, 24 N. E. 474; Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225; 24 Am. Law Rev. 538. The member has his option to retain his membership by complying with the by-laws, or cease to be a member by refusing a compliance. Manufacturing Co. v. Hollis (Minn.) 55 N. W. 1119–1121; Rorke v. Board (Cal.) 33 Pac. 881–883.

But, without undertaking to enter upon any discussion as to the legality of this association, and its right to continue its organization and prosecute its business, and accepting the averments of the bill that the relation of the complainant to the association rests upon a mutual contract between the associates, my conclusion is

that this court cannot proceed to judgment in this action for the want of jurisdiction over all the necessary parties to a full and final determination. Therefore the motion to dissolve the injunction must be sustained. Decree accordingly.