WAGNER ELECTRIC MFG. CO. v. DISTRICT LODGE, NO. 9, INTERNA-
TIONAL ASS'N OF MACHINISTS, et al.

(District Court, E. D. Missouri, E. D.    June 6, 1918.)

No. 4883.

COURTS ☞293—FEDERAL COURTS—JURISDICTION.

A company manufacturing munitions for the United States out of sup-
plies furnished by the United States, which were shipped in interstate
commerce, etc., is acting under the authority of the laws of the United
States to as full an extent as though it had been incorporated under and
in pursuance of national laws, and the federal courts have jurisdiction
of a suit by such company to enjoin a labor union from illegally inter-
fering with its prosecution of government work.

In Equity. Suit by the Wagner Electric Manufacturing Company
against District Lodge, No. 9, International Association of Machinists,
and others. On motion to dismiss. Motion denied.

Leahy, Saunders & Barth and Charles A. Houts, all of St. Louis,
Mo., for complainant.

Julian Laughlin, Edw. L. Rothganger, and Frank H. Haskins, all of
St. Louis, Mo., for defendants.

POLLOCK, District Judge. This suit was instituted by plaintiff for
the purpose of procuring an injunction against defendants, restraining
them from conspiring to do certain threatened and wrongful acts, to
the great and irreparable and special damage of the plaintiff, to its
property and property rights, and property of the United States in its
possession and use. At the institution of the suit a temporary restrain-
ing order was granted plaintiff, which has been continued in force and
effect to this day. The defendants move to dismiss this suit for want
of jurisdiction. This question of jurisdiction has been briefed, argued,
and stands submitted for decision, and is the sole question now pre-
sented for determination.

As the plaintiff, a Missouri corporation, and defendants, are citizens
of this state, it is too clear for argument no jurisdiction exists on the
ground of the diversity of citizenship, and none is claimed. While the
petition of plaintiff, and the supplemental petition filed herein, are too
lengthy and verbose to admit of restatement, all matters material to the
question under consideration may be bery briefly summarized, as fol-
lows:

Defendants are labor organizations, or officers or members of such
organizations, in the employ of plaintiff at the time the acts complained
of were done. The petition avers the plaintiff to be a very large manu-
facturing concern, located in the city of St. Louis, and having in its
employ some 3,500 men. The business in which plaintiff is engaged is
the manufacture of electrical appliances, largely on its own behalf, and
the manufacture of munitions of war for the use of the government
under contracts with the government. The annual amount of business
done by plaintiff is averred to be about $10,000,000. In order to facili-

tate the doing of the work required by the government to be done, there was constructed for the use and occupancy of plaintiff at its manufacturing plant, and at an expense to the government of over $500,-000, a building occupied and used by plaintiff in the doing of its work for the government. Further, the government purchased materials and delivered the same to plaintiff, suitable to be employed in the doing of the war work of the government, of the value of $750,000. All said materials so furnished plaintiff by the government were shipped to plaintiff in interstate commerce, and when manufactured by plaintiff are returned to the government in the same manner. Under its contracts with the government plaintiff is required to give preference to government work, which must be done within a time certain, in a certain specified manner, or, in default, plaintiff must pay heavy penalties, and the officials of plaintiff, on conviction, suffer extreme penalties provided by the law. Further, plaintiff keeps on hand at all times a considerable quantity of perishable food products with which to feed its employés at its plant, etc. It is further alleged in the petition, notwithstanding defendants, and each and all of them, knew these facts hereinbefore alleged, they confederated and conspired with each other and among themselves for the unlawful purpose of preventing plaintiff from keeping or performing its contracts with the government for war supplies, and from engaging in the shipment of manufactured munitions of war, and other materials, in interstate commerce, and to destroy and render stale and useless the accumulated food products which plaintiff had on hand, and to do unto plaintiff, through such conspiracy, other special and irreparable injuries and damages; and this defendants conspired to do by bringing on in plaintiff's plant a strike in which about 65 per cent. of plaintiff's employés, many engaged in the manufacturing of munitions of war, were to leave the employ of plaintiff, through threats, intimidations, assaults made by defendants on said employés, thereby compelling them to join in said strike, leave the employ of plaintiff in a body, and to refrain from remaining in the employ of plaintiff at the risk of their lives and the lives of members of their families, all, as is averred in the bill, for the purpose, in this violent, forceful, and unlawful manner, of compelling plaintiff to make its plant what is known as a "closed shop," and to compel plaintiff to grant in the doing of its own work and the work of the government an eight-hour day. Wherefore plaintiff contends this court has jurisdiction of this controversy, based on the ground a federal question is involved herein.

While it is the contention of the plaintiff the federal question so involved may be found in the provisions of the Sherman Anti-Trust Law, in the Pure Food Act, in what is known as the Sabotage Act, and the Sedition Act of the government, yet, in my judgment, the provisions of all of said acts need not be here now considered for the purpose of determining the jurisdiction of this court. From a reading and somewhat careful analysis of the controversy made by plaintiff in its petition and supplemental pleadings with defendants, I am of the opinion this court does have, and hence must retain, jurisdiction of this cause, and for the following reasons:

First, there can be no question whatever but that, as shown by the petition, plaintiff is engaged in a very large manner, and was at the time the acts done by defendants of which complaint is made, in interstate commerce, both in its private manufacturing capacity and in the performance of its public duties under contracts with the government. Further, that the petition in this case well pleads the joint acts of defendants, in the formation of their unlawful confederation, and the manner in which it was attempted to be carried out, has worked, and, unless restrained, will work, special direct and irreparable injury and damage to plaintiff and to the government of the United States, which, in my judgment, by reason of the provisions of the Sherman Anti-Trust Law, and in harmony with the common law against unlawful combinations in restraint of trade and monopolies, may be enjoined by plaintiff, for through such course of procedure alone lies any complete or adequate remedy against the unlawful combination and acts of defendants averred in the bill.

From a reading of the authorities it is uncertain whether a suit of the present nature raises a federal question sufficient to confer jurisdiction upon this court under the provisions of the Sherman Anti-Trust Act. See Paine Lumber Co. v. Neal, 244 U. S. 459, 37 Sup. Ct. 718, 61 L. Ed. 1256; Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870; and many other cases bearing on this much disputed question. However, as said by Mr. Justice Field in Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52:

"If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

But, be this question ruled as it may, I am convinced this court has and must retain jurisdiction of the controversy here presented on a much larger and broader ground than any claim of jurisdiction which may be asserted under the Sherman Anti-Trust Law (Act July 2, 1890, c. 647, 26 Stat. 209), or other act relied upon by plaintiff in argument, and for this reason: In the matter of the manufacture of munitions of war desired and demanded by the government, and which it must have to protect the very life of the nation itself, the petition avers there has been placed in the hands of the plaintiff by the government a vast amount of materials and property purchased by the government at its own expense, specially designed to be employed and used by plaintiff in the manufacture of such munitions. This property plaintiff holds for the joint use, advantage, and necessities of the government and plaintiff in a joint enterprise. The conspiracy of defendants, as alleged, to bring about a general strike of the employés of plaintiff occupying and using this property of the government, in the manner and for the purpose charged in this case, is fraught with such tremendous consequences, not alone to the property itself, but to the enterprise and war activities of the government, and also to plaintiff, the temporary trustee, occupant, and user of such property, that same may not be and will not be tolerated or suffered under existing circumstances obtaining in this country, without a right of resort to the courts in the protection and necessarily con-

tinued use and operation of said properties in the manner and for the purpose created by the government itself.. Plaintiff, under its contracts, with the government, so considered, and in relation to the property of the government in its hands, is to all intents and purposes an instrumentality or agency of the government itself, created and existing under national laws.

Why, then, it may be inquired, may not such an instrumentality or agency of the government, in the protection, not of its own property and property rights, but in the protection of the use, possession, occupancy, and enjoyment of property conferred to its hands by the government, under. well-settled rules of law, resort to our national courts for the protection sought, instead of being compelled to resort to a court created under authority of and controlled by another sovereign, the state? In other words, in my judgment, in so far as plaintiff in this case is engaged in the doing of work for the government, not as an independent contractor with the government, but through the occupation of property of the government specially constructed and adapted to carrying out the business of the government in the manufacture of munitions of war from materials purchased and owned by the government, all in pursuance of existing laws, it is acting under authority of the laws of the United States to as full an extent as though it had been incorporated under and in pursuance of national laws. In the exercise of rights so granted, and in the performance of duties so enjoined by national laws, a federal question is involved, which confers jurisdiction on this court at the suit of one specially injured, as plaintiff well pleads it is in this suit.

I regard the question of the right of a corporation, organized and existing under national laws, or other instrumentality or agency of the government created under and in pursuance of national laws, in the protection or enforcement of its lawful rights, to resort to our national courts, too well established to admit of the citation of authorities in its support.

It follows the motion to dismiss for want of jurisdiction must be denied.

---

&#61;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes