## NATIONAL FOUNDRY CO. OF NEW YORK, Inc., v. ALABAMA PIPE CO. et al.

### No. 6291.

District Court, E. D. New York.

July 16, 1934.

See, also, 7 F. Supp. 823.

Ernie Adamson, of New York City, for plaintiff.

I. Bregoff, of New York City, for defendant Alabama Pipe Co.

Guggenheimer & Untermyer, of New York City (Edward T. McLaughlin, of New York City, of counsel), for defendant Central Foundry Co.

Shearman & Sterling, of New York City, for defendant Hedges-Walsh-Wiedner Co.

Guggenheimer, Strasser & Meyer, of New York City, for defendant A. Weiskittel & Son Co.

GALSTON, District Judge.

This is an action at law.

The plaintiff is engaged in the manufacture, sale, and distribution of cast-iron soil pipe and fittings. The defendants Alabama Pipe Company, · the Hedges-Walsh-Wiedner Company, Central Foundry Company, Inc., Reading Foundry & Supply Company, Horner Foundry Company, Sanitary Company of America Corporation, and A. Weiskittel & Son Company are engaged also in the same business.

The Continuous Sales Corporation is alleged to be the agent of the Hedges-Walsh-Wiedner Company in the sale and distribution of its product; and Louis B. Laddoux, Inc., similarly is alleged to be the agent of the Reading Foundry & Supply Company for the sale and distribution of its product, in what is designated in the complaint as the "metropolitan" district of New York; Herman Greenberg and Benjamin Greenberg are alleged to be agents of the Horner Foundry Company for the sale of its fittings in the metropolitan district of New York and the borough of Brooklyn; and A. L. Gunther is alleged to be an agent of the Sanitary Company of America Corporation for the sale of its products in the metropolitan district of New York.

It is alleged that all of the defendants are subject to the provisions of the National Industrial Recovery Act (48 Stat. 195) and a Code of Fair Competition for the Cast-Iron Soil Pipe Industry, approved by the President of the United States on September 7, 1933.

It is then alleged that since that date and while engaged in interstate shipment, sale, and distribution, these defendants violated the provisions of that Code, in that they failed to publish and maintain schedules of their prices as required by paragraph 13 of the Code; also that in violation of paragraph 12 of the Code, they have shipped large quantities of soil pipe and fittings into the metropolitan district of New York, on consignment, and distributed them in small quantities; also that defendants, in violation of paragraph 9, subparagraph (d) of the Code, sell in the metropolitan district of New York small quantities of soil pipe and fittings weighing "two thousand pounds or more," in this same district, at net prices which are below the reasonable cost of production, and likewise in violation of paragraph 13 of the Code.

Lastly, it is alleged that these unlawful acts and unfair trade practices have damaged the plaintiff in the sum of $100,000; and it, therefore, seeks judgment in that amount.

The Alabama Pipe Company and the Central Foundry Company, Inc., move to dismiss the complaint on various grounds; that from the complaint it appears that the court has no jurisdiction over the subject-matter; that the plaintiff has not legal capacity to sue; and that the complaint does not state facts sufficient to constitute a cause of action.

The defendant the Hedges-Walsh-Wiedner Company appears specially in support of the motion for an order to vacate and set aside the alleged service of process upon the defendant on the ground that the defendant is a foreign corporation and not doing business within the Eastern District of New York or the State of New York.

It is apparent that the gist of the alleged wrongs of which the plaintiff complains are alleged violations of the National Industrial Recovery Act.

■ The Code in question, entitled "Code of Fair Competition for the Cast-Iron Soil Pipe Industry," is in effect a statute of the United States. It is fundamental that any remedy for the enforcement of rights under this Code must be prescribed by the Code itself or by the National Industrial Recovery Act.

■ Subdivision (b) of section 9 of the Code provides: "Recommendations for dealing with any inequalities that may otherwise arise to endanger the stability of the industry and of production and employment. Such recommendations, when approved by the President of the United States, shall have the same force and effect as any other provisions of this Code. Such agency is also set up to cooperate with the Administrator in making investigations as to the functioning and observance of any of the provisions of this Code, at its own instance or on complaint of any person affected, and to report the same to the Administrator." Section 10 also bears on the subject of complaint, and reads: "If formal complaint is made to the Cast-Iron Soil Pipe Association that the provisions of this Code have been violated by any employer the Planning and Fair Practice Agency provided for in section 9 shall investigate the facts and to that end may cause such examination or audit to be made as may be necessary."

Obviously, neither of these provisions empowers the plaintiff to institute an action arising out of a breach of Code provisions, in this court. Indeed, it may be noted that no provision in the Code giving the plaintiff such status is relied upon by the plaintiff; at least, none is cited.

One is left, therefore, to an examination of the provisions of the National Industrial Recovery Act, title 15, U. S. C. Section 703, subdivision (c), 15 USCA § 703 (c), relates to the jurisdiction of the court, and reads: "The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations." And the same section, subdivision (f), 15 USCA § 703 (f), provides a penalty for violation of the Code, and reads: "When a code of fair competition has been approved or prescribed by the President under this chapter, any violation of any provision thereof in any transaction in or affecting interstate or foreign commerce shall be a misdemeanor and upon conviction thereof an offender shall be fined not more than $500 for each offense, and each day such violation continues shall be deemed a separate offense. (June 16, 1933, c. 90, Title I, § 3, 48 Stat. 196.)"

Clearly, neither of these sections authorizes any individual, firm, or corporation to sue at law or indeed in equity, for damages resulting from Code violations, or to petition for an injunction to prevent and restrain such violations. Since there is no such provision in the act, it must be concluded that it was not the intention of Congress to permit any such multiplicity of suits as would arise from the bringing of actions by private parties.

In Stanley et al. v. Peabody Coal Co., 5 F. Supp. 612, Circuit Judge FitzHenry, sitting in the District Court, called attention to the phrasing of title 15, U. S. C. § 703, subdivision (c), 15 USCA § 703 (c), and the almost precise language of section 4 of the Sherman Anti-Trust Law, 15 U. S. C. § 4 (15 USCA § 4). That provision of the Sherman Anti-Trust law has been before the court frequently for interpretation. In Minnesota v. Northern Securities Co., 194 U. S. 48, 24 S. Ct. 598, 604, 48 L. Ed. 870, it was said: " 'We cannot suppose it was intended that the enforcement of the act should depend in any degree upon original suits in equity instituted by the states or by individuals to prevent violations of its provisions. On the contrary, taking all the sections of that act together, we think that its intention was to limit direct proceedings in equity to prevent and restrain such violations of the anti-trust act as cause injury to the general public, or to all alike, merely from the suppression of competition in trade and commerce among the several states and with foreign nations, to those instituted in the name of the United States, under the 4th section of the act, by district attorneys of the United States, acting under the direction of the Attorney General; thus securing the enforcement of the act, so far as direct pro-

ceedings in equity are concerned, according to some uniform plan, operative throughout the entire country."

The right of a private person to sue to restrain or prevent a violation of the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note), was denied, though the person seeking relief was threatened with a special injury by reason of the unlawful combination. Paine Lumber Co. v. Neal, 244 U. S. 459, 37 S. Ct. 718, 61 L. Ed. 1256. See, also, Western Powder Mfg. Co. v. Interstate Coal Co. (D. C.) 5 F. Supp. 619.

Nor is the plaintiff aided by the Clayton Act (38 Stat. 730), for the wrongs complained of in this action are not of the so-called anti-trust statutes, but of violations of the Trade Code, and in consequence of the National Industrial Recovery Act. It may very well be that a violation of the Code might also be a violation of the anti-trust laws; but I find no allegations in the complaint that this plaintiff is injured in his business "by reason of anything forbidden in the anti-trust laws."

The motion to dismiss the complaint is, therefore, granted.

In view of the foregoing opinion, it becomes unnecessary to pass on the motion to set aside the service of process on the defendant the Hedges-Walsh-Wiedner Company.

Settle orders on notice.